**RECORD NO. 13-4763**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## KENNETH DODD, a/k/a K,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH**

––––––––––––––––

**BRIEF OF APPELLANT**

––––––––––––––––

Joshua B. Howard
GAMMON, HOWARD &
 ZESZOTARSKI, PLLC
115 ½ West Morgan Street
Raleigh, NC 27601
(919) 521-5878

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ......................................................1

ISSUE PRESENTED FOR APPEAL ...................................................1

STATEMENT OF THE CASE..............................................................1

STATEMENT OF FACTS ....................................................................2

SUMMARY OF ARGUMENT ..............................................................5

ARGUMENT .........................................................................................7

    STANDARD OF REVIEW .............................................................7

    DISCUSSION..................................................................................7

        A SENTENCING ENHANCEMENT FOR BRIBING PUBLIC
        OFFICIALS IN HIGH-RANKING DECISION-MAKING OR
        SENSITIVE POSITIONS SHOULD NOT APPLY TO
        BRIBERY OF PRIVATE SECTOR PRISON GUARDS. ..................7

        A.    The text of United States Sentencing Commission,
            *Guidelines Manual,* § 2C1.1(b)(3) (Nov. 2012) bars
            application of the enhancement to the facts of this case............7

            (1).    These guards had no influence over agency
                   decisions ..........................................................................8

            (2).    Private contract prison guards are not analogous to
                   prosecutors, judges, agency administrators, jurors,
                   or law enforcement officers.............................................9

            (3).    The payment was not for the purpose of
                   influencing official acts .................................................11

B. The weight of relevant precedent applies the enhancement to vastly higher-ranking officials but does not envision private contract prison guards falling under the scope of the rule ................................................................ 12

 (1). This Court has upheld the enhancement where applied to vastly more powerful officials ....................... 12

 (2). Published Southern District of New York precedent is persuasive despite a modicum of unpublished, local precedent to the contrary ................. 13

C. If private contract prison guards are deemed public officials in a high-level decision-making or sensitive position, then the enhancement has no conceivable outer limits .......................................................................................... 14

CONCLUSION ...................................................................................... 15

REQUEST FOR ORAL ARGUMENT ................................................. 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*United States v. Allen*,
   446 F.3d 522 (4th Cir. 2006) ...........................................................7

*United States v. Alter*,
   788 F. Supp. 756 (S.D.N.Y. 1992) ............................................4, 13

*United States v. Castillo Chairez*,
   2011 U.S. App. Lexis 7946 (5th Cir. 2011) .................................14

*United States v. Chandia*,
   675 F.3d 329 (4th Cir. 2012) ...........................................................7

*United States v. Gaines*,
   1994 U.S. App. Lexis 29084 (4th Cir. 1994) ...............................14

*United States v. Gary*,
   1998 U.S. App. Lexis 13418 (4th Cir. 1998) ...............................14

*United States v. Matzkin*,
   14 F.3d 1014 (4th Cir. 1994) ...............................................6, 12, 13

*United States v. McCowan*,
   2010 U.S. App. Lexis 25406 (5th Cir. 2010) ...............................14

*United States v. ReBrook*,
   58 F.3d 961 (4th Cir. 1995) .................................................6, 12, 13

*United States v. Rooks*,
   596 F.3d 204 (4th Cir. 2010) ...........................................................7

*United States v. Williams*,
   205 Fed. Appx. 979 (4th Cir. 2006) .......................................13, 14

**STATUTES:**

18 U.S.C. § 201(b)(1)(c) ...................................................................1

18 U.S.C. § 371 ...............................................................................1

18 U.S.C. § 3231 .............................................................................1

18 U.S.C. § 3742 .............................................................................1

28 U.S.C. § 1291 .............................................................................1

**SENTENCING GUIDELINES:**

USSG § 2C1.1 ..........................................................................*passim*

USSG § 2C1.1(b)(3) .................................................................*passim*

**RULES:**

Fed. R. App. Pro. 32.1(a)(ii) ......................................................14

LR 32.1 ...........................................................................................14

**OTHER:**

United States Sentencing Commission, *Guidelines Manual*, § 2C1.1(b)(3) .........5, 7

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231.  Defendant-Appellant Kenneth Dodd filed a timely Notice of Appeal on October 8, 2013.  This appeal is from a final order.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## ISSUE PRESENTED FOR APPEAL

WHETHER A GUIDELINE ENHANCEMENT FOR BRIBERY OF A PUBLIC OFFICIAL IN A HIGH-LEVEL DECISION MAKING OR SENSITIVE POSITION SHOULD APPLY TO THE BRIBERY OF A PRIVATE SECTOR PRISON GUARD

## STATEMENT OF THE CASE

On October 3, 2012, a grand jury sitting in the Eastern District of North Carolina returned a four-count indictment against Kenneth Dodd ("Dodd") and three others.  Count One levied a conspiracy between Dodd, another inmate, and a prison guard to bring contraband into a privately-owned prison in Winton, North Carolina in violation of 18 U.S.C. § 371  (J.A. 10 - 17).  Dodd, an inmate in the prison, was also named in Count Three for bribing a public official on November 14, 2011 in violation of 18 U.S.C. § 201(b)(1)(c).  *Id.*  Dodd was not named in Counts Two or Four, which charged individual guards with accepting bribes.  *Id.*

On April 16, 2013, Dodd pled guilty to Counts One and Three without the benefit of a plea agreement.  (J.A. 18-37).  During the drafting of the Presentence

Investigation Report and at sentencing, he objected to a four offense level

sentencing enhancement under United States Sentencing Guideline Section

2C1.1(b)(3) for bribing officials in high-level decision making or sensitive

positions.  (J.A. 40 - 47, 84 - 88).  On October 3, 2013, the district court overruled

the objection and sentenced Dodd to a total term of imprisonment of 37 months for

Counts One and Three to be served concurrently but consecutive to his pre-existing

sentence.  (J.A. 61 - 66).  Dodd timely filed a Notice of Appeal on October 8,

2013.  (J.A. 67 - 68).

## STATEMENT OF FACTS

From early 2011 until his October 3, 2012 indictment, Kenneth Dodd

("Dodd") was part of conspiracy to bring contraband items into Rivers

Correctional Institute ("RCI") in Winton, North Carolina.  (J.A. 72 - 74).  RCI is a

private, minimum security facility which contracts with the Bureau of Prisons to

house prisoners.  (J.A. 72).  Dodd, 33 years of age, was housed at RCI in service of

a 287-month sentence from a prior offense committed in the District of Columbia.

(J.A. 75).  Count One charged Dodd, another inmate, and a correctional officer

with the conspiracy.  (J.A. 10 - 17).  Count Two charged a correctional officer for

taking a bribe; Count Four charged a different correctional officer for taking a

bribe.  *Id.*  Count Three charged Dodd for giving a bribe.  *Id.*  On April 16, 2013,

Dodd pled guilty to both counts against him without a plea agreement. (J.A. 18 - 37).

On August 12, 2013, Dodd filed detailed, written objections to the recommendation in the draft Presentence Investigation Report ("PSR") that the district court impose a four offense level enhancement for bribing a public official in a high-level decision-making or sensitive position. (J.A. 84-88). The prosecution made no written response. The final PSR overruled Dodd's objection, noting the defense cited "a host of published and unpublished opinions in support of the position that the enhancement does not apply." (J.A. 82 - 83). The probation officer did not respond to the cited precedent. He noted "[t]here is no Fourth Circuit case law directly on point with this issue." *Id.* The probation officer asserted, without citation to authority, "[t]he case-at-bar involves contract prisons [sic] guards which are considered public officials in a sensitive position." (J.A. 82). His recommendation to apply the enhancement relied exclusively upon the relevant application notes. (J.A. 82 - 83).

Dodd pursued and preserved the objection before the sentencing court. (J.A. 40 - 51). Dodd argued the text of the guidelines, controlling precedent, and good reason barred application of the enhancement. *Id.* Dodd handed up lude photographs which the prison guards had sent to their inmate boyfriends that had been included in the government's discovery materials as proof of the conspiracy.

3

(J.A. 46). Dodd used the photographs to argue "[t]his is not a portrait of a high-ranking government official. These are not people vested in sensitive government positions. You Honor, this is a picture of someone who should fall outside the scope of this rule." *Id.*

The prosecution argued in favor of the enhancement. (J.A. 47 - 50). The prosecutor argued the text of the guidelines was in favor of her position rather than Dodd's. (J.A. 47 - 48). She further argued that a 2004 change to the guidelines was designed to broaden application of the enhancement. (J.A. 48). She noted that while *United States v. Alter*, 788 F. Supp. 756 (S.D.N.Y. 1992), declined to apply the enhancement, that court nonetheless upwardly departed. (J.A. 48 - 49). She echoed Fifth Circuit precedent on point, asserting "[a] prison guard has the authority and the ability to directly and significantly influence inmates' lives and the entire facility's safety with the decisions he or she makes." (J.A. 50).

The district court offered Dodd a chance to respond to the government's exclusively oral arguments and overruled the objection:

> It's a very thoughtful presentation and the Court notes the Fourth
> Circuit hasn't ruled on the narrow question of whether a correctional
> officer is a sensitive position, but based on my review where there
> have been a number of determinations as to who might be in a
> sensitive position, including directors of halfway houses, the attorney
> for the State Lottery Commission, a supervisory Navy engineer and
> branch head, that's another case, people with control over preparing
> Congressional hearing testimony, people with access to sensitive
> information and supervisory authority, one doesn't need to linger long

4

> when thinking about the sensitive nature of guarding in a prison
> setting and the importance of that position, the sensitiveness of that
> position in dealing with inmates, in discharging duties, in promoting
> respect, in maintaining safety, and how undermining this type of
> conduct was.
>
> So I'm compelled to conclude, while there isn't a Fourth Circuit case,
> that the Fifth Circuit the Court should also take guidance from, which
> has ruled that prison guards or correctional officers constitute
> sensitive positions. A prison guard, as noted in one of the cases, has
> the authority and the ability to directly and significantly influence
> inmates' lives and the entire facility's safety with the decisions he or
> she makes. So I believe that objection must be overruled.

(J.A. 50 - 51). The district court proceeded to sentence Dodd to the low end of the

advisory guideline range, 37 months in prison. (J.A. 61 - 66). Absent the four-

level enhancement, Dodd's advisory guideline range would have been 24 to 30

months in prison. (J.A. 83).

## SUMMARY OF ARGUMENT

Kenneth Dodd suffered a four offense level sentencing enhancement

applicable to those that bribe a public official in a high-level decision-making or

sensitive position. His sentence should be vacated and remanded for resentencing

for three reasons. First, the text of the relevant guideline does not support

application of the enhancement where a defendant bribed mere private sector

contract prison guards. *See* United States Sentencing Commission, *Guidelines

Manual*, § 2C1.1(b)(3). The guards in question were not high-level decision-

makers nor were they in the kind of sensitive position the Sentencing Commission

5

described as subject to the enhancement.  The Commission's Application Notes mandate the bribe recipient be in a decision-making or influential position.  *See* § 2C1.1, Application Note 4.  The Application Notes give examples such as prosecutors, judges, and law enforcement officers.  *Id.*  The guards involved in this case are not in analogous roles.

Second, the weight of relevant precedent applies the enhancement to bribes of government officials with senior policy-making and spending authority and not to junior, private sector employees such as the instant guards.  The procurement official of *United States v. Matzkin*, 14 F.3d 1014 (4th Cir. 1994), and the trusted commission attorney of *United States v. ReBrook*, 58 F.3d 961 (4th Cir. 1995), both carried authority and discretion not afforded the instant private prison guards.  No published Fourth Circuit precedent binds these facts to the application of this enhancement.

Finally, good reason bars application of the enhancement to this case.  If a mere prison guard working for a private sector Bureau of Prisons contractor amounts to a public official in a high-level decision-making or sensitive position, then the enhancement would appear to have no outer limit.  The Court of Appeals should reverse the application of the enhancement on these facts and thereby establish a limit to the application of this enhancement.

## ARGUMENT

## STANDARD OF REVIEW

This Court reviews factual findings for clear error.  *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006).  In assessing a guideline enhancement, this Court reviews findings of fact for clear error and legal decisions *de novo*.  *See, e.g., United States v. Rooks*, 596 F.3d 204, 210 (4th Cir. 2010); *see also United States v. Chandia*, 675 F.3d 329, 337 (4th Cir. 2012).

## DISCUSSION

**A SENTENCING ENHANCEMENT FOR BRIBING PUBLIC OFFICIALS IN HIGH-RANKING DECISION-MAKING OR SENSITIVE POSITIONS SHOULD NOT APPLY TO BRIBERY OF PRIVATE SECTOR PRISON GUARDS.**

**A.    The text of United States Sentencing Commission, *Guidelines Manual,* § 2C1.1(b)(3) (Nov. 2012) bars application of the enhancement to the facts of this case.**  Section 2C1.1(b)(3) provides a four offense level enhancement to defendants that have bribed a public official "if the offense involved an elected public official or any public official in a high-level decision-making or sensitive position."  Two paragraphs offered in Application Note 4 to Section 2C1.1 add significant context to the otherwise spartan guideline.  Note 4(A) defines high-level decision-making or sensitive positions as "a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency,

or other government entity, or by a substantial influence over the decision-making process." Note 4(B) then offers examples of public officials in high-level decision-making positions, to include: "a prosecuting attorney, a judge, an agency administrator, and any other public official with a similar level of authority." It distinguishes this group from those in sensitive positions, which include "a juror, a law enforcement officer, an election official, and any other similarly situated individual." The "Background" text of Section 2C1.1 clarifies "[u]nder § 2C1.1(b)(3), if the payment was for the purpose of influencing an official act by certain officials, the level is increased by 4 levels."

**(1).    These guards had no influence over agency decisions.**

Rivers Correctional Institute (RCI) is a privately-owned, minimum security prison housing federal inmates under a contract with the Bureau of Prisons. (J.A. 72). Dodd bribed correctional officers at the facility. To find the correctional officers to be public officials in a high-level decision-making or sensitive position, Application Note 4(A) mandates their positions hold direct authority to make decisions for a government entity or at least have substantial influence over the decision-making process. There is no record evidence of any governmental decision the correctional officers ever made. There is no record evidence of them ever having any influence, much less substantial influence, over any government agency decision. Indeed, as private sector employees they are even more insulated

8

from any role over the decisions of a governmental agency.  The relevant guards

fail the first test of the Application Notes, which is dispositive of the broader issue

in Dodd's favor.  Any other resolution would effectively read this textual mandate

out of the guidelines.

> **(2).    Private contract prison guards are not analogous to**
>
> **prosecutors, judges, agency administrators, jurors, or law enforcement**
>
> **officers.**  Application Note 4(B) gives examples of both high-level decision-

makers and, separately, those in sensitive positions.  The guards Dodd bribed do

not fit either category.  To apply the enhancement on the basis the bribed official

was a high-level decision-maker, the Note requires the official to have a level of

authority similar to that of a prosecuting attorney, judge, or agency administrator.

Private sector prison guards are not vested with any similar authority.  Indeed,

prosecutors and judges are vested with the authority to decide who will end up in

prison.  Agency administrators can decide where those prisons will be and who

might operate them.  Guards work underneath and in support of that higher

authority; they do not share it.  The enhancement cannot apply based on any

analogy to this class of officials.

The note also gives examples of public officials in sensitive positions and

mandates the bribed official be similarly situated.  Importantly, the examples

include exclusively sworn officials:  jurors, law enforcement officers, and elections

officials.  There is no record evidence the private contract prison guards at issue were subject to any oath.  Their positions are not similarly situated to law enforcement officers.  Law enforcement officials have one of the most Constitutionally-significant authorities in government:  the power to take people from liberty into custody.  The instant prison guards merely monitor inmates moving from one custodial arrangement to another.  They are by no means endowed with powers similar to law enforcement such as arrest and release.  They are by no means similar to jurors with the power of determining guilt or innocence.  Indeed, prison guards exist beneath and in support of the findings of law enforcement officers and jurors.

The district court focused on this second, "sensitive position" analysis in ruling against Dodd.  "[W]hat we're really talking about here is the sensitive position part of all of this."  (J.A. 42).  In finding prison guards to be in a sensitive position, she noted "the sensitiveness of that position in dealing with inmates, in discharging duties, in promoting respect, in maintaining safety, and how undermining this type of conduct was."  (J.A. 50 - 51).

The district court's analysis does not support application of the enhancement.  There is no basis to find dealing with inmates is any more sensitive than dealing with the public at large.  Put simply, inmates have fewer rights than the general public.  There is no basis to find the discharge of their duties is any

more sensitive than run-of-the-mill public servants:  all public officials need to

discharge their duties.  Similarly, promoting respect might be deemed an obligation

of all human beings and not just public officials in a sensitive position.

Maintaining safety is an obligation of many public employees, including custodial

staff.  Surely government janitors are not within the scope of the enhancement.

The fact that the bribes undermined operations of the jail is no basis to apply the

enhancement, either.  The underlying charge and concomitant penalty already

recognize and punish that harm.  The enhancement is designed to provide

additional penalty to particularly insidious forms of bribery, like corrupting justice

through the functions of jurors or federal agents.  Private sector prison guards

present a vastly more isolated risk adequately punished without additional

enhancement.

> **(3).    The payment was not for the purpose of influencing official**
>
> **acts.**  A brief sentence in the background text of the application notes further

illustrates the intended targets of this enhancement.  "Under § 2C1.1(b)(3), if the

payment was for the purpose of influencing an official act by certain officials, the

offense level is increased by 4 levels."  USSG § 2C1.1, Background.  The instant

scheme was not designed to influence the guards' official acts:  prison guards

delivering contraband to prisoners are operating outside their official capacity and

in derogation of their role.  Bribing the warden to use his discretion to change

prison policy might qualify; bribing guards to break those policies is not within the scope of the background note.

**B.    The weight of relevant precedent applies the enhancement to vastly higher-ranking officials but does not envision private contract prison guards falling under the scope of the rule.**

**(1).    This Court has upheld the enhancement where applied to vastly more powerful officials.**  This Court has repeatedly dealt with Section 2C1.1(b)(3) in the context of higher ranking public officials.  In *United States v. Matzkin*, 14 F.3d 1014 (4th Cir. 1994), the Court of Appeals applied the enhancement in the context of a major procurement fraud involving a senior Navy official.  The *Matzkin* Court noted the official "was involved in decision-making on multi-million dollar Navy contracts and had considerable discretion and influence in these matters.  He also supervised other Navy engineers." *Id.* at 1021. The guards involved in Dodd's case had no such spending authority and no such supervisory responsibilities; there is no record evidence of their discretion or influence to substantiate the enhancement.

This Court endorsed the application of the enhancement in *United States v. ReBrook*, 58 F.3d 961 (4th Cir. 1995).  *ReBrook* presented an attorney for a state lottery commission with influence over commissioners and access to confidential information.  *Id.* at 963.  There is no record evidence that the guards at issue had

12

any such influence or access.  Importantly, the guards were neither licensed professionals nor government employees as was the case in *Matzkin* and *ReBrook.*

### (2).    Published Southern District of New York precedent is persuasive despite a modicum of unpublished, local precedent to the contrary.

*United States v. Alter*, 788. F.Supp. 756 (S.D.N.Y. 1992)(rev'd on other grounds) presented hideous facts of sexual abuse committed by a Bureau of Prisons halfway house director against its residents.  In resolving whether or not the abusive director was an official in a high-level decision-making or sensitive position, the court held:

> [t]his offense level characteristic does not apply to the facts in this case.  Alter's position as director of a halfway house placed him at a low level in the Bureau of Prisons hierarchy.  The Bureau of Prisons' 1990 Facilities Booklet reveals that Alter's superior, the Bureau of Prisons Community Programs Manager, was eleven levels removed in the bureaucratic 'chain of command' from the highest position of director of Bureau of Prisons.

*Id*. at 767.  In deciding the enhancement did not apply, the Southern District of New York court noted, "Alter lacked the legal authority to impose major disciplinary sanctions without referring the discipline cases to his superiors."  *Id.* The director in Alter was obviously more powerful than the guards at issue and yet the district court did not impose this enhancement.

The district court found *Alter* inapt by citing this Court's unpublished, six-sentence, *per curiam* opinion in *United States v. Williams*, 205 Fed. Appx. 979 (4th

13

Cir. 2006). While the *Williams* Court found no error in the lower court's ruling

that particular halfway house director was a public official holding a high-level

position, neither the underlying facts nor rationale are laid out as they are in the

published *Alter* decision. Indeed, reliance upon *Williams* in this Court would

appear to violate Fed. R. App. Pro. 32.1(a)(ii) and LR 32.1.[1] More importantly,

there is no published basis to assume this Court would find lower-ranking, private

sector guards governed by the facts of *Williams.*

**C.     If private contract prison guards are deemed public officials in a**

**high-level decision-making or sensitive position, then the enhancement has no**

**conceivable outer limits.** Existing precedent of this Court very reasonably found

that major procurement officials and trusted professionals in state government

merit enhancement for being in high-level decision-making or sensitive positions.

The prison guards at issue bear no semblance to those officials and share no similar

access or responsibility. The officials noted above hold positions similar to the

judges and agency administrators given as examples in Application Note 4,

---

[1]   In the district court, Dodd addressed a series of unpublished decisions that merit
notation and disclosure here. This Court allowed the enhancement in the context
of a Senior Executive Service Navy procurement official in *United States v.
Gaines*, 1994 U.S. App. Lexis 29084 (4th Cir. 1994). This Court allowed the
enhancement in *United States v. Gary*, 1998 U.S. App. Lexis 13418 (4th Cir.
1998), which involved a corrupt administrative law judge. The Fifth Circuit Court
of Appeals has twice applied the enhancement to prison guards in unpublished
decisions. *See United States v. McCowan*, 2010 U.S. App. Lexis 25406 (5th Cir.
2010); *see also United States v. Castillo Chairez*, 2011 U.S. App. Lexis 7946 (5th
Cir. 2011).

because corruption among their ranks is hard to detect.  Insidious corruption of that nature merits heightened punishment.  The guards of this case are markedly dissimilar:  one of the RCI guards at issue saw fit to develop a quasi-sexual relationship with an inmate serving decades in federal prison and, beyond that, sent him countless sexually explicit text message photographs that could easily be shared with other prisoners.  (J.A. 46 - 47, 73).  She communicated about the scheme with a co-defendant via monitored Bureau of Prisons email systems.  (J.A. 73).  Such poverty of character and ham-handed execution is wholly inconsistent with the types of high-ranking professionals targeted in the Application Note and applicable precedent of this Court.   The enhancement does not reach all public officials:  it certainly should not be held to reach private sector prison guards.

## CONCLUSION

For the foregoing reasons, Defendant-Appellant Kenneth Dodd respectfully requests his sentence be vacated and the case be remanded for resentencing without application of the relevant enhancement.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a), Appellant respectfully requests oral argument in this appeal, as he submits the Court's decisional process will be aided by oral argument given the factual and legal issues involved in this matter.

This the 3rd day of February, 2014.

/s/ Joshua B. Howard
Joshua B. Howard
N.C. State Bar Number 26902
GAMMON, HOWARD & ZESZOTARSKI, PLLC
115 ½ West Morgan Street
Raleigh, NC  27601
(919) 521-5878
jhoward@ghz-law.com

*Counsel for Appellant*

16

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

this brief contains 3,470 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using
Microsoft Word in 14 point Times New Roman.

/s/ Joshua B. Howard
Joshua B. Howard

Dated: February 3, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on February 3, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jennifer P. May-Parker
OFFICE OF THE
  UNITED STATES ATTORNEY
Federal Building
310 New Bern Avenue, Suite 800
Raleigh, NC  27601
(919) 856-4530

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219